## ETZOLD v. BOARD OF COMMISSIONERS OF HUNTINGTON COUNTY.

[No. 11,440. Filed November 7, 1924. Rehearing denied February 9, 1925. Transfer denied April 7, 1925.]

1. COURTS.—*Court reporter's compensation fixed by the court.* —The compensation of a court reporter for the circuit court serving from 1904 to 1915 was fixed by the court under the provisions of the act of 1899 (Acts 1899 p. 384, §7, as amended by Acts 1913 p. 601, §1691 Burns 1914). p. 662.

2. EVIDENCE.—*Courts take judicial knowledge of method of paying sheriff for attending, court.*—It having been a matter of common knowledge how the sheriff was paid for attending court, the courts of Indiana will take judicial notice of the manner in which the sheriff received his pay for such service, and that the sheriff was paid on allowances made by the court. p. 662.

3. COURTS.—*Word "audited" in statute concerning court reporter's pay construed to mean "allowed."*—In the act of 1899 providing for the appointment of court reporters and authorizing the judge of the court to fix the reporter's compensation, not exceeding "five dollars per day for each day required by such judge to be in attendance upon the court," which compensation was to be "certified, audited and paid in like manner as provided by law for the payment of sheriffs for attending upon the court" (Acts 1899 p. 384, §7, §1691 Burns 1914), the word

"audited" is used in its general sense synonymously with "allowed." p. 662.

4. COURTS.—*Court reporter who accepted judge's allowances for services not entitled to additional compensation.*—A court reporter for the circuit court, employed and allowed compensation under Acts 1899 p. 384, §7, §1691 Burns 1914, who presented claims for his services for the period of his employment and who accepted the amounts allowed by the judge cannot enforce payment of larger amounts even though warranted by the statute. p. 664.

From Adams Circuit Court; *Richard H. Hartford* Special Judge.

Action by John C. Etzold against the board of commissioners of Huntington county. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*Charles K. Lucas, George A. Yopst* and *Walter G. Todd,* for appellant.

*Claude Cline,* for appellee.

PER CURIAM.—Judgment affirmed.

ON PETITION FOR REHEARING.

This action was instituted by John C. Etzold against the board of commissioners of Huntington county to recover compensation for services rendered as reporter of the Huntington Circuit Court. It is averred in the complaint that the plaintiff was the official reporter of the court from May 28, 1904, to February 15, 1915. The bill of particulars, filed with and made a part of the complaint, discloses the payments he received from time to time and the balance which he avers is due and unpaid. Relating to the days for which he received no compensation, as shown by the bill of particulars, the averments of the complaint are that "he was required by the judge of the Huntington Circuit Court to attend, and did attend, said court as official court reporter. 1,068 days for which days he has not received any compensation;

and that he has demanded compensation for such days so required of him to be in attendance, but the judge of the court refused to make allowance or to certify such attendance to the auditor or treasurer of the county for payment, and no part thereof has ever been paid."

The special finding discloses the following facts:

"The Hon. James C. Branyan was judge of the Huntington Circuit Court from (and prior to) May 21, 1904, to November 10, 1906; and on the last named date he was succeeded by the Hon. Samuel E. Cook who served in that capacity until sometime after February 15, 1915.

"The plaintiff was appointed official reporter of the court on May 28, 1904, by the Hon. James C. Branyan, judge thereof; and at that time his compensation was fixed at $5 for each day when required by the judge to be in attendance upon the court. He accepted the appointment and discharged the duties of reporter under that order continuously until February 15, 1915.

"The appropriation for the payment of the reporter's compensation was $1,200 for each year of his period of service.

"From the date of his appointment to November 10, 1906, Judge Branyan required the reporter to be in attendance upon the court every day the court was in session, but allowed him compensation at the rate of $5 per day for such days only as he reported cases or did other work under the direction of the judge; and if the reporter actually worked one-half day or less on any calendar day, the judge allowed him only half compensation at the rate fixed.

"On April 25, 1907, the plaintiff filed in said court his claim for unpaid services rendered prior to November 10, 1906. That claim was submitted to Hon. B. H.

Hurd, special judge, for trial. The trial resulted in an allowance of $80 on the claim. Prior to the commencement of this action, the plaintiff was paid for his services rendered prior to November 10, 1906, the sum of $1,826.50.

"From November 10, 1906, to February 15, 1915, the plaintiff was required by Judge Cook to be, and he was, in attendance upon the court 1,053 days for which he was allowed and paid compensation in the sum of $5,265. Between the last two dates he was also actually present in court and ready to discharge any official duty which might arise, 819 days when his attendance upon the court was not required by the judge, but his presence on those days was voluntary.

"The various allowances were made at short intervals, usually at intervals of one week. Each allowance was in full of all compensation due him for services since the last preceding allowance; and the amount of each allowance was paid to and accepted by him as full payment and satisfaction of all compensation due him to the date thereof.

"Whenever an allowance was made for a less sum than the plaintiff believed himself entitled to receive under the law and the facts, he protested. Much friction and ill feeling was engendered by the numerous controversies between him and the judge concerning the allowances. When such controversies arose, he was told by the judge that he was being allowed all that was due him and that if he was not satisfied with the amount of his allowances, he could quit. When he presented to Judge Branyan claims for compensation in larger sums than the judge was willing to allow, he was told by the judge that if he did not stop presenting claims for compensation for days on which he did not report any case, he would be discharged. He always submitted to the action of the judge in making the allowances,

reserved no exceptions thereto, and accepted the allowances and received the amounts thereof in payment of his compensation.

"Before the commencement of this action the plaintiff requested the judge of the Huntington Circuit Court to make him an allowance for the amount claimed in his complaint, to be paid from the county treasury, which request the judge refused. Thereupon he filed his claim for allowance by the board of commissioners where it was disallowed; and this action was commenced March 3, 1916.

"That 563 of the days for which the plaintiff claims compensation were prior to March 3, 1910, and to that extent his cause of action accrued more than six years before the commencement of his action.

"That the plaintiff's cause of action was fully paid before the commencement of this action."

The conclusions of law are: (1) That the plaintiff is not entitled to recover, and (2) that the defendant is entitled to recover costs. Judgment accordingly.

The assignment of errors challenges the action of the court in overruling the demurrer to the eighth paragraph of answer, in overruling the motion for a new trial, and in stating each conclusion of law.

DAUSMAN, C. J. (after stating the facts as above). Since the facts have been found specially and conclusions of law have been stated thereon, the ruling on the demurrer need not be discussed.

The evidence tends fairly to sustain the finding of facts in all respects, unless it be as to the particular finding that the plaintiff's cause of action had been paid. That particular finding requires special consideration.

It should be specially noted that the bill of particulars concedes that numerous payments were made to the plaintiff. Concerning those payments, there is no controversy. His action is to recover the compensation

alleged to be due him in excess of those payments; and, therefore, his *cause of action* is his claim that he is entitled to compensation over and above the amounts which by his complaint he admits were actually paid him. Was that cause of action extinguished by payment?

Some of the statements in the special finding, relating to this point, are mere recitals of evidential facts. The evidence bearing upon the question of payment is harmonious. Without the slightest conflict, it shows that from time to time the plaintiff presented to the judge for allowance verified itemized statements of his claims for compensation; that frequently the statements included days for which, in the opinion of the judge, he was not entitled to compensation; that upon inspection the judge invariably refused to allow compensation for those days, struck them out of the statement, and allowed for the remaining days only; that although often told that if he was not satisfied with the allowances he could quit, and although Judge Branyan often threatened to discharge him if he did not desist from the practice of including in the statements of his claims days on which he did no actual work he would be discharged, nevertheless he did not resign, neither was he discharged; that he continued to present claims for allowance which included days for which the judge refused to allow compensation; that he also filed numerous claims for allowance from which he omitted days for which he believed he was entitled to compensation, which omissions were for the reason that he knew it would be useless to include them; that he invariably accepted the allowances, although for less amounts than he claimed, and received from the county treasurer the sums designated in the allowances; that for a foundation for this action he went back through the years and counted the juridical days on which he was actually

present in court and ready to discharge his official duties and for which days no compnesation had been allowed; and that he actually received the compensation allowed him by the judge, and no more.

Manifestly, the evidence forcefully excludes the idea of payment. There was no payment within the proper legal meaning of the word "payment." Each judge stubbornly and consistently refused to allow the reporter compensation for the days here involved. Doubtless either judge would have vigorously resented any imputation that he in any way aided the reporter to obtain payment for those days; and it is apparent that the reporter keenly appreciated that he was not receiving pay for the days which were stricken from his claims. The finding that the plaintiff's cause of action was fully paid before the commencement of the action is erroneous; nevertheless, for the reasons hereinafter appearing, it does not constitute reversible error.

From the special finding as an entirety, considered in the light of the evidence, it is inferable that the court has not used the word "payment" in its proper legal sense. It is quite probable that what the court really meant is that although the plaintiff was not in truth satisfied with his allowances and did not in truth accept part of his numerous claims as payment of the whole, nevertheless the fact that he acted upon the allowances and received the amounts thereof from the county treasurer in the manner stated in the finding, must be regarded in law as an extinguishment of his entire claim. Whatever may have been the real purpose of the trial court in finding that "each allowance was paid to and accepted by him as full payment and satisfaction of all compensation due him to the date thereof," appellee's counsel are now contending that the claim was extinguished on the principle of accord and satisfaction. The importance of this particular fea-

ture, especially in this jurisdiction, calls for careful consideration.

The plaintiff was appointed and his compensation was fixed by the court pursuant to an act of the legislature, approved March 8, 1899 (Acts 1899 p. 384). In the year 1913, §7 of that act was amended (Acts 1913 p. 601). In all things pertaining to his official position, including his duties and compensation, during the full period of his service, he was governed by the former statute and by that statute as amended.

It should be appreciated that by the former act the legislature has declared that it shall be the imperative duty of the court to appoint an official reporter for the purpose of facilitating and expediting the administration of justice; has fixed no definite term of office or service for the reporter, but has authorized the judge to remove him at any time; has directed that: "He shall be allowed a compensation of not more than five dollars per day for each day required by such Judge to be in attendance upon the Court as such official reporter"; and has directed that his compensation "shall be certified, audited and paid in like manner as is provided by law for the payment of Sheriffs for attending upon the Court." Precisely what the legislature intended by directing that the reporter's compensation "shall be certified, audited and paid in like manner as is provided by law for the payment of Sheriffs for attending upon the Court" we are unable to determine by reference to any statute. Counsel have cited no statute directing how the compensation of sheriffs for attending upon the courts shall be certified, audited and paid; and we know of none. At the time the legislation now under consideration took effect, there was a statute which provided that the sheriff of each county should receive $2 per day for attendance upon the court; and the same statutory provision

existed long prior thereto and has existed ever since. But in no statute have we discovered any explicit direction as to how that compensation should be certified, audited and paid.   However, it is a matter of common knowledge that it has been the practice throughout the State to pay that compensation on allowances made by the court.   See *Board, etc.,* v. *Crone* (1905), 36 Ind. App. 283; *Board, etc.,* v. *Neely* (1905), 36 Ind. App. 706; *Board, etc.,* v. *Fitzgerald* (1906), 40 Ind. App. 24. In the case at bar, every payment to the reporter was made in the following manner; the reporter presented to the court his verified itemized statement of the compensation claimed to be due him; the court determined the amount which it considered was due the reporter, wrote the word "Allowed" thereon, and subscribed the name of the judge thereto; the reporter then presented the statement and allowance to the auditor who issued a warrant thereon; and the warrant was cashed by the treasurer.   We assume that the payments were made pursuant to §1694 *et seq.* Burns 1914, §1412 R. S. 1881.   In any event, the legislature having directed the appointment of a reporter, the court had inherent power to allow his compensation, within the statutory limit, and to order payment thereof.   15 C. J. 900.   We shall treat the manner of payment, therefore, as in all respects legal.   It should be specially observed that the direction of the statute is that the reporter's compensation shall be "certified, audited and paid."   In its general sense, "to audit" means to adjust; to allow or reject; to ascertain; to determine; to decide; to pass upon; to settle; to hear, examine and determine a claim, by its allowance or rejection in whole or in part; and implies the exercise of discretion.   The term is infrequently used in a narrow and restricted sense to denote the mere verification of figures and computations, the work of a mere accountant.   6 C. J. 846.   "Audi-

tor" and "accountant" are sometimes confused. *Bru-naugh* v. *State* (1910), 173 Ind. 483. In the statute now under consideration, the word "audited" is used in its general sense and synonymously with "allowed."

The record discloses that, soon after Judge Cook came upon the bench, the reporter filed a claim for all unpaid compensation which he claims was due him for services rendered throughout Judge Branyan's term; that thereupon Judge Cook appointed a special judge to hear the matter; that at the hearing thereon, the reporter was represented by counsel; and that the trial resulted in an allowance in the sum of $80.

Now, what is the legal effect of the allowances and the reporter's conduct with reference thereto? This court is not prepared to say that in making the allowances in the case at bar, especially the allowances made by Judge Hurd, the judges acted in a purely ministerial capacity. However, for the sake of avoiding the difficulty which confronts us, we will assume that the making of each allowance was a ministerial act. Now, what has the appellant gained? The general rule is that where an allowance of a claim which is to be paid from funds derived by taxation is made by an administrative officer or by an administrative board authorized by law to make allowances, and the claimant accepts the amount allowed him, he may not afterward recover any balance claimed in excess of the amount allowed. *Butler* v. *Board, etc.* (1912), 177 Ind. 440; *Western, etc., Co.* v. *Board, etc.* (1912), 178 Ind. 684; *Perry* v. *Cheboygan* (1884), 55 Mich. 250, 21 N. W. 333; *Davey* v. *Big Rapids* (1891), 85 Mich. 56, 48 N. W. 178; *Callahan* v. *Mayor, etc.* (1875), 6 Daly (N. Y.) 230; *Paulson* v. *Ward County* (1912), 23 N. D. 601, 137 N. W. 486, 42 L. R. A. (N. S.) 111, Ann. Cas. 1914D 826. See, also, 28 Cyc 1751. Whether, in truth, the rule rests on the principle of accord and satisfaction, on the principle

of waiver, or on the ground that allowances so made are *quasi* judicial, we will not now stop to inquire. The case at bar comes fully within the rule.

The real controversy arises upon the construction of the statute. The reporter contends (and always has contended) that, by virtue of the statute, it was his duty to be in attendance upon the court every day on which the court was in session, whether required by the judge to work or not; and that, by virtue of the statute, he is entitled to compensation for every day on which he was in attendance upon the court, whether he worked or did not work. Counsel for the appellee contend that, by virtue of the statute, the reporter is entitled to compensation for those days only on which he was required by the judge to perform actual work. The construction of the statute was involved in each and every allowance. It follows that when the reporter was aggrieved by any of those allowances, he should have refused to accept the amount allowed and should have taken the proper course to obtain a construction of the statute by a higher tribunal. His many protests and objections are unavailing. For the purposes of the case at bar, the question of the proper construction of the statute is of no importance; for it cannot affect the result.

The petition for rehearing is denied.